BOWLING, Justice,
for the Court:
Appellants, Louis Scott and Nathaniel Anderson, were indicted, tried and convicted in the Circuit Court of Warren County for the crime of armed robbery. In its verdict, the jury set the punishment for each at life imprisonment in the penitentiary.
The sole assignment of error in the appeal is that the verdict of the jury was against the overwhelming weight of the evidence. We affirm.
Mark Allen Holiness operated a store on the east side of U.S. Highway 61 about fourteen miles south of Vicksburg, Mississippi. As a part of the store operations there were two gasoline pumps in front of the store. Holiness testified that at about eight o’clock A.M. on the morning of the robbery he was inside the store for the purpose of receiving payment for gasoline from Peggy Ross, who was in a car with Cindy Hollowell and Marie Holiness on their way to work in Vicksburg. According to Holiness, another vehicle had driven up to the gasoline pump immediately prior to the three ladies leaving. Thereafter, one of the persons got out of the car that had stopped and came inside the store. This person told Holiness to “turn the gas pumps on.” Holiness stated that he had a clear view of the car and saw two black males therein, one was slim and tall and the other huge and fat. The slim person first came *933 into the store and asked about food. The large person then came in the store, drew a pistol and placed the end of the barrel between the eyes of Holiness and told him, “If you don’t give my your money, I’ll blow your brains out.” Both defendants were positively identified by Holiness during his testimony. Neither man was disguised at the time of the robbery.
The large man began beating Holiness with the pistol and knocked him down behind the counter. Holiness then gave the man a bag of money containing $350. During this time the slim man was trying to put gas in the car, and the large man was holding the gun threatening to shoot Holiness, stating that “I’m going to go ahead and kill you now.” The men then decided to hurry away without getting the gasoline, saying they now had money to purchase it elsewhere. As they drove away, Holiness could see that the car had a Louisiana license plate. He then called the sheriff’s office and furnished them a description of the two men and the car.
Peggy Ross testified that she lived in a trailer near the store. She drove her car to the store to purchase gasoline, with Cindy Hollowell and Marie Holiness in the car with her. She testified that when she arrived at the gasoline pumps there was a car there with “two colored men” in it and the car was a Cougar. She did not see the rear of the car and was not able to identify the license plate. She positively identified a picture of appellant’s car as the one at the station. Further, she testified that one man got out of the car at the gasoline pump while she was there and that sitting in the car was a large man with big bulging cheeks. (The men had not gone into the store at that time.) Also, she stated she then drove away toward Vicksburg. Finally, this witness positively identified the appellants as the two men she saw in the Cougar automobile.
Next, Cindy Hollowell related about being in the car with Peggy Ross getting gasoline when the car containing the two men drove up to the store. She stated that the driver got out of the car first, admitting she did not see his face but remembered that he was tall and slim. She noticed the person sitting on the passenger side of the front seat and stated that he appeared to be an extremely large black male. The witness testified that she saw his face and identified him as appellant Louis T. Scott at the trial. Also, she identified the appellant’s car from a picture that had been introduced in evidence. As previously testified to, she stated the car containing the men was still at the store after they had driven away.
Jerry Powell testified that he worked at AAA Auto Service located on Highway 61 south of Vicksburg. The first he knew of the robbery at the Holiness store was when some officers came by the service station. Shortly before the officers came by, Powell stated that a gray Mercury Cougar had stopped at his station for gasoline. There were three black males in the car. A large man was on the passenger side in front and a slender man was driving, and there was a young black male on the rear seat of the car. They purchased $12 worth of gasoline and a road map. Powell also positively identified Scott at the trial as the large black male that was sitting on the passenger side of the front seat of the car.
Witness Bernard Forbes testified that he was eighteen years of age and grew up in New Orleans. He knew appellants Scott and Anderson. He testified that he was making the trip with them at the time the robbery occurred and when they drove up to the store he was lying down on the back seat of the car asleep. When the car stopped, he was awakened. He raised up and looked toward the store and both Scott and Anderson were inside the store. Forbes testified that he saw the robbery take place and saw Scott when he grabbed the man and “put the pistol to him.” According to Forbes, Anderson then tried to put gasoline in the car but was unable to do so. He testified that they were short of money and that Scott brought a sack of money out of the store with him. The trio then stopped at a service station “up the road” while they were driving in a norther *934 ly direction and bought gasoline. The money was in a little brown case secured in the robbery. They purchased $12 worth of gasoline and a road map; then they stopped at another store and bought some orange juice and peanuts. Scott gave him $10 of the money taken in the robbery. According to Forbes, they then proceeded through Vicksburg in a northerly direction on Highway 61. When they reached Leland, Mississippi, he noticed a police car stopped on the side of the road facing south. The police car turned around and “cut his siren on” and began pursuing the Cougar. Scott said, “just get ready,” and the car was stopped. The appellant immediately got out of the car and started “popping.” He explained that as shooting guns at the policeman. They then tried to drive away but something was wrong with the car. By that time other officers had arrived and all three were arrested. Forbes identified the pistol taken from Scott as Scott’s pistol and identified the photographs of the car as the one used in the robbery. He reiterated that he saw Scott strike the head of the man in the store with the pistol introduced in evidence.
Witness Paul Barrett was the Sheriff of Warren County. He was advised of the robbery shortly after eight o’clock A.M. After this notification he then got in his car and started to the scene — but the car stopped running and he had to get a ride with another person. They proceeded to the store and began their investigation. Shortly thereafter, a description of the car was broadcast by radio as being a silver Cougar with a Louisiana license plate, and Barrett secured a description of the two men who committed the robbery. He testified that Holiness had a blue spot and bumps on his head and his face was swollen where he was struck by the pistol.
Barrett then testified that towns along Highway 61 north of Vicksburg were called by telephone and alerted as to the robbery, and were likewise given a description of the car and the individuals. The first he knew of the arrest of appellants was when he secured information of a “gun battle” in Leland. He immediately called the Sheriff’s office in Washington County and learned what had occurred. He immediately secured an airplane and flew to Leland. Pictures were made of the car that later were introduced in evidence and identified by all of the witnesses.
Witness Robert McMasters was chief of police of the Town of Leland. He testified that on the day in question he received a communication over the police network in regard to the armed robbery south of Vicksburg. He had three officers on duty other than himself at the time and had three patrol units in addition to his car. McMasters testified that Police Officer Donald Kelly was alone in his vehicle. He received a communication over the radio that Policeman Kelly had apparently observed the car being sought and was in the process of pursuing it northerly toward Leland. McMasters immediately left the station to try and assist Officer Kelly at the location Kelly had given over his radio. When he arrived he found Officer Kelly’s car and the Mercury Cougar stopped. He observed Officer Kelly lying at the rear of his patrol car. The Cougar was attempted to be started and McMasters fired a shot at the left rear tire so that it could not be moved. All three black male individuals in the car were arrested. McMasters identified the car from the pictures that had been introduced in evidence. Also, he identified the appellants who were sitting at the counsel table. He testified that included in the weapons found in the car was “a sawed-off 12-gauge shotgun.” The pistol which had been used in the robbery was secured, and as hereinbefore stated, was introduced in evidence at the trial and identified by the witness Forbes.
From the above condensed discussion of the evidence, it is clear that the verdict of the jury was not against the overwhelming weight of the evidence and there is no merit in this sole assignment of error propounded by appellants.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.